E-FILED
Friday, 08 March, 2019  01:28:27 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| **JENNIFER RAMIREZ,**<br><br>　　　　**Plaintiff,**<br><br>**v.**<br><br>**COMMUNITY HOSPICES OF AMERICA, L.L.C., a foreign Limited Liability Company, d/b/a HOSPICE COMPASSUS – NORTHWEST ILLINOIS; COMMUNITY HOSPICE OF AMERICA; FC COMPASSUS LLC; COMPASSUS HOSPICE; COMPASSUS HOSPICE PALLIATIVE CARE; COMPASSUS; HOSPICE COMPASSUS; COMPASSUS HOSPICE & PALLIATIVE CARE; and KARA SEARS,**<br><br>　　　　**Defendants.** | Case No.  19-cv-4051 |

### DEFENDANT FC COMPASSUS, LLC'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Defendant, FC Compassus, LLC d/b/a Compassus Hospice & Palliative Care ("Compassus"),[1] hereby removes the above-captioned action, currently pending in the Circuit Court of the Fourteenth Judicial Circuit of Rock Island County, Illinois, to the United States District Court for the Central District of Illinois, Rock Island Division, pursuant to 28 U.S.C. §§ 1332(a)(1), 1332(c)(1), 1441(a) and 1446.  Compassus will promptly file in said Circuit Court its Notice to State Court of Removal of Civil Action to Federal Court.  The case is being removed

---

[1] FC Compassus, LLC d/b/a Compassus Hospice & Palliative Care, is improperly named as Community Hospices of America, L.L.C., a foreign Limited Liability Company, d/b/a Hospice Compassus – Northwest Illinois; Community Hospice of America; FC Compassus LLC; Compassus Hospice; Compassus Hospice Palliative Care; Compassus; Hospice Compassus; Compassus Hospice & Palliative Care in Plaintiff's Complaint.  At all relevant times, Plaintiff was employed by FC Compassus, LLC d/b/a Compassus Hospice & Palliative Care.

upon complete diversity of citizenship among the parties after the citizenship of Kara Sears ("Sears"), a fraudulently joined defendant, is disregarded.  The grounds for removal are as follows:

**I.     JURISDICTION AND VENUE**

1.     This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), and is one that may be removed by this Court by Compassus pursuant to 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states after the citizenship of Sears (a fraudulently joined defendant) is disregarded, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below.  28 U.S.C. §§ 1332, 1441(a), 1446(b).

2.     The Complaint was filed in the Circuit Court of the Fourteenth Judicial Circuit of Rock Island County, which lies within the United States District Court for the Central District of Illinois, Rock Island Division; thus, this Court is the proper forum for removal pursuant to 28 U.S.C. §§ 1391, 1441, 1446(a).

**II.    PROCEDURAL HISTORY**

3.     On or about February 1, 2019, Plaintiff Jennifer Ramirez filed a lawsuit in the Circuit Court of the Fourteenth Judicial Circuit of Rock Island County, Illinois, entitled *Jennifer Ramirez v. Community Hospices of America, L.L.C., a foreign Limited Liability Company, d/b/a Hospice Compassus – Northwest Illinois; Community Hospice of America; FC Compassus LLC; Compassus Hospice; Compassus Hospice Palliative Care; Compassus; Hospice Compassus; Compassus Hospice & Palliative Care and Kara Sears*, Civil Action No. 2019L20 ("Complaint"), which is attached as **Exhibit A** pursuant to 28 U.S.C. § 1446(a).  The Complaint alleges claims under the Illinois Whistleblower Act ("IWA") against both Sears and Compassus.

4.	The Complaint and Summons was served upon Compassus on February 8, 2019.  *See* **Exhibit B**.  Other than the initial Complaint served on Compassus, no other pleadings have been filed in this matter.

## III.	TIMELINESS OF REMOVAL AND NOTICE

5.	This Notice of Removal is timely in that it has been filed within thirty (30) days of service upon Compassus of the Summons and Complaint, on February 8, 2019, and within one year of the filing of the Complaint on February 1, 2019.  *See* 28 U.S.C. § 1446(b).

## IV.	COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

6.	The Court has jurisdiction over this action because complete diversity of citizenship between citizens of different states exists and the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).

### A.	Plaintiff is a Citizen of Illinois

7.	Diversity jurisdiction requires "the citizenship of all plaintiffs be diverse from the citizenship of all defendants."  *H.C. Duke & Son, LLC v. Prism Mktg. Corp.*, No. 11-4006, 2013 WL 3864445, at *1 (C.D. Ill. July 25, 2013).  An individual is a citizen of his or her domicile.  *Mader v. Motorola, Inc.*, No. 98-3040, 1999 WL 220108, at *2 (7th Cir. 1999).  An individual's domicile is his or her permanent home, or "the place to which one intends to return when absent."  *Id.*  To determine domicile, federal courts consider the totality of the circumstances, and weigh factors like "residence, voting practices, location of personal and real property, bank and brokerage accounts, membership in associations, place of employment, driver's license, auto registration, and payment of state taxes."  *Id.*

8.	As Plaintiff alleges in her Complaint, she was employed in Moline, Illinois, and is a resident of Moline, Illinois in Rock Island County.  Complaint ¶¶8, 10.

**B.**     **Compassus is Not a Citizen of Illinois**

9.     The citizenship of a limited liability company, such as Compassus, for purposes of diversity jurisdiction is determined by examining the citizenship of each of its members.  *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006).  A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  A corporation's principal place of business is the state in which it maintains its headquarters.  *Id.*

10.     Compassus is a limited liability company which formed under the laws of the State of Delaware.  *See* **Exhibit C**, Declaration of Lamar Grant Wade, ¶ 4.  Its principal place of business is at 10 Cadillac Drive, Suite 400, Brentwood, TN 37027.  *See* Complaint ¶ 2; **Exhibit C**, ¶ 4.  Compassus' sole member is Formax Health Holdings, LLC a limited liability company organized under the laws of the State of Delaware with its principal place of business in Brentwood, Tennessee.  *Id.* at ¶ 5.  Compassus is not a citizen of Illinois.  *Id.* at ¶ 6.

**C.**     **Kara Sears Should be Disregarded for Diversity Purposes Because Plaintiff Cannot Maintain a Claim Against Sears Under the IWA**

11.     The Court may properly disregard Sears' citizenship because the claim against her is groundless and no possible cause of action can be established against her.  *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73-74 (7th Cir. 1992) (finding joinder of resident defendant was fraudulent where the plaintiff failed to state any cause of action against resident defendant).  Fraudulent joinder is a judicially created doctrine that provides an exception to the

requirement of complete diversity.  *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011); *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 n. 9 (7th Cir. 2009).

12.     To establish fraudulent joinder, a removing defendant "must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant."  *Poulos*, 959 F.2d at 73.  If the removing defendant can meet this burden, the federal district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction."  *Schur*, 577 F.3d at 763.

13.     It does not have to be shown that the joinder of a non-diverse defendant was for the purpose of preventing removal.  Rather, the question is simply whether there is any possibility that the plaintiff will be able to establish liability against the party in question. *Poulos*, 959 F.2d at 73.

14.     Here, as fully set forth below, Plaintiff will not be able to establish a cause of action against Sears, Plaintiff's supervisor, and her citizenship should therefore be disregarded for diversity purposes.  As a matter of Illinois law, Ms. Sears cannot be held personally liable under the IWA.

15.     Neither the Seventh Circuit Court of Appeals nor the Central District of Illinois has addressed whether a supervisor may be individually liable under the IWA.  Nor have any of the Illinois Appellate Courts.[2]  While the Supreme Court of Illinois has not opined on whether there is individual liability under the IWA, it has spoken on individual liability with

---

[2] Although the Illinois Appellate Court has not specifically addressed whether a supervisor may be held individually liable under the IWA, the lower court's proceeding in *Brame v. City of N. Chicago* indicates that there is no individual liability under the IWA.  *See Brame v. City of N. Chicago*, 2011 IL App (2d) 100760, ¶2, 955 N.E.2d 1269, 1271 (Sept. 6, 2011) (in the lower court's proceeding, the trial court granted the defendants' motion for summary judgment to dismiss individual defendants on the basis that there is no individual liability under the IWA.).

regard to the tort of retaliatory discharge, which shares many commonalities with the IWA. Specifically, the Supreme Court has held that an individual employee cannot be subject to personal liability for a claim of retaliatory discharge. *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 570 (Ill. 1998) (the Supreme Court dismissed plaintiff's common law retaliatory discharge claim against his ex-employer's agent who had carried out the firing. The court specifically held that the "employee who carries out the employer's decision to fire will not be subject to personal liability for retaliatory discharge."); *see also*, *Bovan v. Am. Family Life Ins. Co.*, 897 N.E.2d 288, 295 (Ill. App. Ct. 2008) ("it is the employer and not the employer's agent who should be held liable for any damages caused"); *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236 (Ill. 2008) (affirming that "general principles of agency law may not be logically applied to the tort of retaliatory discharge and … that the tort of retaliatory discharge may be committed only by the employer.").

16.    In *Buckner*, the Supreme Court addressed "whether a plaintiff may bring a retaliatory discharge action against the employee or agent of his former employer who effected the discharge on behalf of the employer." 694 N.E.2d at 567. The Court rejected the plaintiff's argument that he could sue his former supervisor, stating that even if the supervisor "devise[d] the plan" to discharge the plaintiff, "the discharge is still authorized *by the employer*." *Id.* at 570 ("[T]he power to hire and fire employees is ultimately possessed only by the employer. Consequently, the tort of retaliatory discharge may be committed only by the employer.").

17.    Given the similarities between the elements of retaliatory discharge[3] and retaliation under the IWA,[4] it can be fairly assumed that the Supreme Court would rule in a

---

[3] In order to prevail on a claim of retaliatory discharge, the employee must prove: (1) he or she was discharged; (2) in retaliation for his or her activities; and (3) the discharge violated a clear mandate of public policy. *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 880 (Ill. 1994).

similar fashion if presented with the question of whether there could be individual liability under the IWA.

18.     Plaintiff's single cause of action against Sears under the IWA is based on her role as Plaintiff's former supervisor, and her alleged participation and recommendation in Plaintiff's unlawful termination.

19.     Similar to the tort of retaliatory discharge, the IWA provides that an "*employer*" may not retaliate against an employee.  740 ILCS 174/20 (emphasis added) ("An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act.").  An "employer" is defined as "an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees . . . and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees."  740 ILCS 174/5.

20.     Similar to the individual defendant in *Buckner*, Sears is not Plaintiff's "employer" as defined by the IWA.  As the Court in *Buckner* pointed out, a supervisor "may carry out [the function to hire or fire an employee] on the employer's behalf, but it is still the authority of *the employer* which is being exercised."  694 N.E.2d at 569.  Thus, "it is the employer who is rightly held liable for damages."  *Id.*  Here, Sears does not fit within the IWA's definition of an "employer."  Plaintiff admits that she was employed at the "Moline's Hospice Compassus," but does not allege that she was employed by Sears.  *See* Complaint ¶ 10.  In fact,

---

[4] Similar to the tort of retaliatory discharge, to establish a cause of action under section 20 of the IWA, the employee must show: (1) he or she refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation; and (2) his or her employer retaliated against him or her because of the refusal.  740 ILCS 174/20.

Plaintiff admits that Sears was the "manager of the Moline Compassus Hospice and was the person supervising plaintiff." *Id.* at ¶ 29.

21.     On its face, Plaintiff's claim against Ms. Sears fails because the IWA does not permit individual liability.  Accordingly, to the extent Plaintiff seeks to hold Sears liable under the IWA based on her supervisor status, such a claim fails as a matter of law.  *See Parker v. Illinois Human Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *9 (N.D. Ill. Oct. 25, 2013) (holding that "[t]he language in the IWA appears to be patterned on the federal statutes [Title VII and the ADA], and the similar language suggests that the Illinois legislature did not intend to impose individual liability on an employer's agents, but merely to express that the agents' acts are attributable to the employer.")

**D.     The Amount in Controversy Exceeds $75,000**

22.     The amount in controversy in this case exceeds $75,000. [5]   In her Complaint, Plaintiff seeks an award *in excess* of $50,000, plus costs, attorney's fees, expert witness fees and equitable relief.  *See* Complaint, page 6 (seeking a judgment against Defendant "*in excess* of $50,000 *plus* costs of this action") (emphasis added).

23.     There is no question that the amount in controversy is *at least* $50,000, and close review of the allegations reveals that a good faith estimate of the amount in controversy is over $75,000; therefore, this case should proceed in federal court.  "When removing a suit, the defendant… is entitled to present its own estimate of the stakes." *Back Doctors Ltd. v. Metropolitan Property*, 637 F.3d 827, 830 (7th Cir. 2011).  Where a plaintiff provides little information about the value of his claim, a defendant seeking removal need only "establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence." *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th

_____

[5] Compassus does not concede, and specifically reserves the right to contest, all of Plaintiff's alleged damages.

Cir. 2017) (internal quotation mark omitted).  After that showing, jurisdiction can be defeated "only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006), quoting *St. Paul Mercury Indem. Co. v. Red Cob Co.*, 303 U.S. 283, 289 (1938).

  24. Plaintiff is seeking damages for back pay and benefits; future pay and benefit loss; alleged emotional distress; other compensatory damages including those for loss of enjoyment of life; and attorney's fees, expert witness fees, and litigation costs.  *See* Complaint ¶¶ 25, 26, 27, 28.

  25. Plaintiff's hourly rate at the time of her discharge was $28.39 per hour. *See* **Exhibit C**, Declaration of Lamar Grant Wade, ¶ 8.  In 2018, she earned $54,872.00.  *Id.*  She claims in her Complaint that she was terminated on August 29, 2018.  Complaint ¶ 20.  Using the rate of $28.39 per hour, and assuming a 40 hour workweek without any overtime, Plaintiff's back pay is approximately $30,673.82 to date, not inclusive of any lost benefits.

  26. Plaintiff also would be potentially entitled to an award of front or "future" pay.  "[A]s a matter of Illinois law a wrongfully discharged employee may recover lost back pay and front pay from his or her former employer for the period following the discharge until the employee either finds new employment or is reinstated."  *Hunt v. DaVita, Inc.*, Case No. 10-602-GPM, 2010 WL 5058372, at *2 (S.D. Ill. Dec. 6, 2010), *aff'd*, 680 F.3d 775 (7th Cir. 2012); *Hankammer v. Pac. Sunwear of Cal., Inc.*, Case No. 12-CV-0845-MJR, 2012 WL 5507312, at *4 (S.D. Ill. Nov. 14, 2012) (same); *see also Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 217 (1998) (upholding an award of approximately $300,000 in front pay to a plaintiff who made $24,400 a year in a case alleging claims of workers' compensation retaliation).  Assuming Plaintiff were awarded just two years of front pay, that award would have an approximate value

of $61,347.64 (twice Plaintiff's 2018 earnings), again exclusive of any benefits.  Thus, Plaintiff's back pay and front pay alone meet the jurisdictional threshold.

27.     Attorney's fees may also be considered in this calculation.    Plaintiff's counsel has undoubtedly incurred some expense and earned fees for his work on this matter, and "attorneys' fees up to the time of removal… count toward the jurisdictional amount." *Oshana,* 472 F.3d at 512.

28.     Plaintiff is also seeking damages arising out of her purported emotional distress.  The IWA permits recovery for emotional damages in retaliation claims.[6]  A defendant's good-faith estimate of emotional distress damages for jurisdictional purposes may be "based on case law in which the plaintiff had suffered similar injuries and was awarded pain and suffering damages in amounts that satisfy the jurisdictional requirements." *Mitchell v. Schenker, Inc.*, Case No. 3:17-CV-00655-NJR-DGW, 2017 U.S. Dist. LEXIS 172395, at *4 (S.D. Ill. Oct. 18, 2017), citing *McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 845 (7th Cir. 2009). Damages awarded for the type of emotional injury Plaintiff alleges can be significant.  *See, e.g.*, *Peeler v. Village of Kingston Mines*, 862 F.2d 135, 136 (7th Cir. 1988) (upholding an award of $50,000 for emotional distress where the only other damages were $400 in lost wages); *Tullis v. Townley Engineering Mfg. Co.*, 243 F.3d 1058, 1069 (7th Cir. 2001) (upholding an award of over $80,000 for mental anguish and inconvenience where the only other damages were less than $16,000 in lost wages).

29.     Adding together Plaintiff's current estimated back pay, a potential front (or future) pay award, attorneys' fees, plus estimated emotional distress damages, there can be no

---

[6] Compassus does not have to prove that Plaintiff would likely recover a certain amount in emotional distress damages to satisfy its burden.  When evaluating whether the amount in controversy has been met, "the question here is not whether the [plaintiff] is more likely than not to recover" a particular category of damages, "but whether Illinois law disallows such a recovery." *Back Doctors*, 637 F.3d at 830.  Here, it does not.

legal certainty that the amount in controversy is less than $75,000, and this matter belongs in federal court. *Back Doctors*, 637 F.3d at 830.

       30.    Further, Plaintiff did not file a binding stipulation or affidavit in state court prior to removal limiting her damages to less than $75,000, as the Seventh Circuit has advised. *See Oshana*, 472 F.3d at 511–512 ("If Oshana really wanted to prevent removal, she should have stipulated to damages not exceeding the $ 75,000 jurisdictional limit."); *In re: Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992) ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints.")

## V.    NOTICE TO THE COURT AND PARTIES

       31.    Attached as **Exhibit D** is a copy of the Notice to the Clerk of the Circuit Court of the Fourteenth Judicial Circuit of Rock Island County, Illinois, of the Filing of Notice of Removal, the original of which is being filed with the Clerk of the Circuit Court of the Fourteenth Judicial Circuit of Rock Island County as required by 28 U.S.C. § 1446(d).

       32.    Attached as **Exhibit E** is a true and correct copy of the Notice to Adverse Party of Filing of Notice of Removal, the original of which is being served on the following individual, as required by 28 U.S.C. § 1446(d):  John Doak, Katz Nowinski P.C., 1000 – 36th Street, Moline, Illinois 61266.

       33.    Compassus files this Notice of Removal solely for the purpose of removing the instant action and does not waive, and specifically reserves, any and all defenses.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Compassus respectfully removes the above-captioned case from the Circuit Court of the Fourteenth Judicial Circuit of Rock Island County, Illinois, to the United States District Court for the Central District of Illinois, Rock Island Division.

Respectfully submitted,

By:  *s/Kathryn E. Siegel*
Attorney for Defendant

Kathryn E. Siegel
Jenna Kim
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1000
Chicago, IL  60654
(312) 372-5520

Dated: March 8, 2019

## CERTIFICATE OF SERVICE

I, Kathryn E. Siegel, an attorney, hereby certify that on March 8, 2019, a true and correct copy of the foregoing ***Notice of Removal*** was served on the attorney of record named below by Federal Express:

John F. Doak
KATZ NOWINSKI P.C.
1000 – 36th Avenue
Moline, IL  61265-7126

*s/Kathryn E. Siegel*
Kathryn E. Siegel

FIRMWIDE:162538084.2 062866.1068